IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| CECIL HAWKINS, | : | |
| | : | |
| Plaintiff, | : | 5:05-CV-417 (CAR) |
| | : | |
| vs. | : | |
| | : | |
| PACTIV CORPORATION, | : | |
| | : | |
| Defendant. | : | |

**ORDER**

Plaintiff Cecil Hawkins ("Plaintiff") brings this employment discrimination action against Defendant Pactiv Corporation ("Pactiv"), his former employer, claiming that Pactiv enforced its Attendance Policy ("Policy") in a racially-discriminatory manner in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*. and 42 U.S.C. § 1981(a). Currently before the Court is Defendant's Motion for Summary Judgment [Doc. 21]. For the reasons discussed below, the Court **GRANTS** Defendant's Motion.

**Factual Background**[1]

Pactiv operates a facility in Macon, Georgia, that produces fiber egg cartons for

---

[1] The facts recited in this section are taken in the light most favorable to Plaintiff. Wherever necessary, and without further notation, any factual disputes appearing in the record have been resolved in Plaintiff's favor. See Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918-19 (11th Cir. 1993).

customers around the world. Pactiv hired Plaintiff, an African-American male, in 1972 to work in its shipping department. Pactiv eventually promoted Plaintiff to the Mold Room, where he built egg carton molds.

During the period of time relevant to this action, Pactiv ostensibly adhered to an Attendance Policy ("Policy") that was outlined in the Employee Handbook and prominently displayed throughout the facility. (Pl.'s Ex. 1 to Bish's Dep.) Pursuant to the Policy, Pactiv allotted each employee, in addition to personal, vacation, and FMLA-excused days, eight unexcused absences, known as "incidents." (Id.) Accumulation of eight incidents in a rolling 12-month period "result[ed] in the employee's discharge." (Id.)

The record does not indicate the extend to which Pactiv enforced the Attendance Policy prior to Elizabeth Hallman Bryant ("Bryant") assuming the position of human resource manager in July 2002. The record is clear, however, that Bryant began to enforce the Policy immediately upon her arrival. In enforcing the Policy, Bryant first warned employees when they were close to reaching the eighth incident. She then reviewed employees' unexcused absences with them for accuracy to ensure that absences that should be excused did not inadvertently count against an employee as an incident. If, at that time, an employee informed Bryant that an incident should have been an excused absence, Bryant modified the employee's record accordingly. However, if an employee accumulated eight incidents notwithstanding the reduction,

2

Bryant terminated that employee.

Throughout his employment with Pactiv, Plaintiff accumulated numerous absences. In May 2004, Bryant informed Plaintiff that he had reached seven incidents and warned him that his next incident would lead to his termination. Despite the warning, however, Plaintiff continued to accumulate incidents—as one incident would drop off, he would acquire another. By August 18, 2004, Plaintiff had once again reached seven incidents. Bryant then met with Plaintiff, and they reviewed each of Plaintiff's incidents for accuracy. Although some of the incidents were actually FMLA-excused absences, as Plaintiff took them to take care of his disabled wife and son, Plaintiff did not notify Bryant of such because he feared that this sensitive information would be revealed to his co-workers.

On September 15, 2004, Plaintiff accumulated his eighth incident when he missed a day of work to meet with his probation officer. On September 24, 2004, Pactiv terminated Plaintiff, citing his violation of the Attendance Policy as the reason for his termination. Plaintiff now claims that he was a victim of disparate treatment because of his African-American race.

**Discussion**

**I. Summary Judgment Standard**

The summary-judgment rule exists "to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp., 477 U.S. at 322. A genuine issue of material fact necessary to defeat a properly supported motion for summary judgment arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, a court must review all the evidence in the record while "draw[ing] all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see also Maynard v. Williams, 72 F.3d 848, 851 (11th Cir. 1996).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and entitle it to a judgment as a matter of law. Celotex Corp., 477 U.S. at 323 (internal quotation marks omitted). If the moving party discharges this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would

4

support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(e); Celotex Corp., 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this scheme, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

## II. Analysis

As previously mentioned, Plaintiff claims that Pactiv enforced its Attendance Policy in a racially-discriminatory manner, such that African-American employees who violated the policy were terminated, while Caucasian employees were not. Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . . 42 U.S.C. § 2000e-2(a). Section 1981 similarly prohibits race discrimination, but only in private employment. 42 U.S.C. § 1981(a). Claims of employment discrimination brought under Title VII and § 1981 require the same elements of proof and utilize the same analytical framework. See Standard v. A.B.E.L. Servs., 161 F.3d 1318, 1330 (11th Cir. 1998). As such, the Court will consider Plaintiff's Title VII and § 1981 claims together.

In Title VII and § 1981 cases, a plaintiff may establish his or her claim through the introduction of direct evidence of discrimination or through circumstantial evidence that creates an inference of discrimination. Bass v. Bd. of County Comm'rs, 256 F.3d 1095, 1103 (11th Cir. 2001). Although Plaintiff, in his Response brief, summarily alleges that he can "show discriminatory intent through . . . direct evidence," the Court finds that the record is devoid of any evidence that would meet this Circuit's stringent definition of direct evidence. See Akouri v. Fla. Dep't of Transp., 408 F.3d 1338, 1347 (11th Cir. 2005) (stating that "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." (internal quotation marks omitted)). Having found no direct evidence of discrimination, the Court evaluates Plaintiff's claims under the circumstantial-evidence framework detailed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1972).

Under the McDonnell Douglas burden-shifting framework, an employee must first demonstrate a prima facie case of discrimination. Id. at 802. If the employee establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). Once the employer provides a legitimate, non-discriminatory reason for its action, the employee's prima facie case is rebutted. Id. at 253. The employee must then show that the employer's proffered reasons were

6

merely pretext for discrimination. Id.

To satisfy his initial burden of establishing a prima facie case of discrimination, Plaintiff must show that: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly situated Caucasian individual.[2] See, e.g., Maynard v. Bd. of Regents, 342 F. 3d 1281, 1289 (11th Cir. 2003). Pactiv does not dispute that Plaintiff meets the first three prongs, but argues that Plaintiff cannot show that Pactiv treated any similarly-situated Caucasian employee less favorably than Plaintiff. The Court agrees.

To show that employees are similarly situated, the plaintiff must show that the "employees are similarly situated in all relevant respects . . . . In determining whether employees are similarly situated . . . it is necessary to consider whether the employees are involved in or accused of the same or similar conduct are disciplined in different ways." Holifield, 115 F.3d at 1562. "This analysis should include an evaluation of whether the plaintiff is matched with a person or persons who have very similar job-related characteristics and who are in a similar situations to determine if the plaintiff

---

[2] Instead of showing that Plaintiff was treated less favorably than similarly-situated Caucasian employees, Plaintiff may satisfy his prima facie case by showing that he was replaced by someone outside the protected class. See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). Despite Plaintiff's assertions to the contrary, he cannot make this showing. The record establishes that Mr. Tim Worthy, an African-American male, replaced Plaintiff in the Mold Room.

7

has been treated differently than others who are similar to him." Wehunt v. R.W. Page Corp., 352 F. Supp. 2d 1342, 1351 (M.D. Ga. 2004) (internal quotations omitted).

Plaintiff identifies three Caucasian males who he claims were similarly situated and treated more favorably than him—Evan Yates, Stephen Robb, and Perry Mossman. He claims that these fellow employees accumulated at least eight incidents in a rolling 12-month period, but were not terminated. The Court, however, finds that none of these individuals are proper comparators for this employment-discrimination analysis; Yates and Robb were not similarly situated to Plaintiff, and Pactiv did not treat Mossman more favorably than Plaintiff.

*i. Stephen Robb and Evan Yates*

Plaintiff correctly notes that Pactiv did not terminate Robb, a Caucasian male, when he accumulated 8.5 incidents in April of 2002, nor did it terminate Yates, also a Caucasian male, when he accumulated 8.5 incidents in 1997. Although Pactiv disciplined both of these individuals, the imposed discipline fell short of termination. In arguing that these two males are similarly situated, however, Plaintiff neglects the fact that both of these individuals accumulated the requisite number of incidents for termination *before* Bryant became the human resource manager and were therefore disciplined by Bryant's *predecessor*. Plaintiff, on the other hand, was subject to Bryant's discipline. Because the change in management may explain Pactiv's inconsistent application of the Policy, Robb and Yates are not similarly situated to Plaintiff. See, e.g.,

8

Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1261 n.5 (11th Cir. 2001) ("[d]ifferences in treatment by different supervisors . . . can seldom be the basis for a viable claim of employment discrimination"); see also Jones v. Gerwens, 874 F.2d 1534, 1541 (11th Cir. 1989) (observing that "disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis.")

*ii. Perry Mossman*

Plaintiff also correctly notes that Mossman, another Caucasian male, accumulated 12.5 incidents in 2003, but was not terminated. However, consistent with Bryant's practice, she met with Mossman to review the accuracy of Pactiv's records. At that time, Mossman informed her that eight of his incidents should have been excused pursuant to the FMLA. After making the necessary changes, Mossman had only 4.5 incidents, 3.5 incidents short of the termination requirement. Notably, when Mossman actually accumulated eight unexcused incidents in a rolling 12-month period, Pactiv terminated his employment.

Much like Mossman, Bryant gave Plaintiff an opportunity to inform her of the inaccuracies in his attendance record on August 18, 2004, when she met with Plaintiff to review his record.³ Although Plaintiff accumulated some of his incidents as a result

---

³ In his affidavit, Plaintiff claims that he was *not* afforded the same opportunity as his co-workers to verify the reasons for his absences with Ms. Bryant. In his deposition, however, Plaintiff testified that Ms. Bryant met with him to go over each and every incident for accuracy on August 18, 2004. This Court will not now allow Plaintiff to create an issue of fact by contradicting his earlier sworn deposition testimony with an affidavit. See Van T. Junkins and

of having to take care of his disabled wife and son (qualifying him for the FMLA-related leave) he failed to inform Bryant of that fact because he feared that this information would be revealed to his co-workers. While his fear may have been reasonable, Plaintiff cannot now blame Pactiv for not excusing his absences when he refused to reveal the true nature of those absences. In fact, Plaintiff admits that, prior to his termination, Pactiv excused several of his absences after he informed Pactiv that they were taken to take care of his wife and son. (Pl.'s Dep. 48:6-48:24.) Therefore, contrary to Plaintiff's assertion that Pactiv treated Mossman more favorably than it treated Plaintiff, the record indicates that Pactiv treated Plaintiff exactly the *same* as it treated Mossman. Therefore, Mossman, like Robb and Yates, is not a proper comparator.

Because the Court finds that none of the individuals named by Plaintiff were similarly-situated employees who were treated more favorably than him, Plaintiff failed to establish his prima facie case of discrimination. Accordingly, the Court **GRANTS** Pactiv's Motion for Summary Judgment.

---

Assoc., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984) ("[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.")

**Conclusion**

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment [Doc. 21].

**SO ORDERED,** this 29th day of March, 2007.

S/ C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

**EHE/jab**